IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | No. CR 21-991 DHU |
| ARTHUR QUINTANA, | ) | |
| Defendant. | ) | |

**UNITED STATES' OPPOSED SECOND MOTION IN LIMINE
TO PRECLUDE DEFENSE EVIDENCE OR COMMENT**

The United States respectfully moves this Court for an order prohibiting Defendant, his counsel, and any defense witnesses from asking any question, introducing any evidence, or making any statement regarding the following matters while the jury is present. Defendant was contacted for his position on this motion and opposes the requested relief.

**1. Discussion**

**A. ALLEGATIONS OF GOVERNMENT MISCONDUCT**

The United States moves this Court to preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding allegations of government misconduct or constitutional violations. Defendant should not be allowed to present allegations of government misconduct, constitutional violations, or any other issues to the jury because, *inter alia*, the probative value of such allegations would be substantially outweighed by the prejudice and jury confusion that such allegations would create. Fed. R. Evid. 401, 402 and 403.

Moreover, such allegations, if allowed before the jury, would run the risk of creating

mini-trials about issues that are questions of law that the jury should and will be wholly unaware of, absent Defendant raising them in advance. Fed. R. Crim. Pro. 12(b)(3). For this reason, evidence, testimony, questions, and argument regarding such allegations should be excluded if not properly raised before trial. *Id.*

No evidence of government misconduct or constitutional violations is known to exist by the United States. This is a prophylactic request made in an abundance of caution. Because the United States has not identified "the particular evidence at issue and [has not] articulate[d] with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground," *United States v. Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002), aff'd, 349 F.3d 1276 (10th Cir. 2003), the government grants that the Court may hold a ruling on this matter in abeyance. However, the government respectfully requests that should Defendant wish to present such evidence, he should bring it to the Court's attention before introducing it at trial in front of the jury.

### B. PRE-TRIAL RULINGS

Similarly, and for some of the same reasons, this Court should preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding the contents of, or rulings on, any motions filed by either Defendant or the government pretrial. Fed. R. Evid. 401, 402 and 403. More concretely, Defendant should be barred from advancing any line of inquiry that seeks an alternative means of admitting evidence or testimony contrary to a prior ruling without first providing notice to the Court and counsel.

### C. PLEA NEGOTIATIONS

The United States moves this Court to preclude Defendant and his counsel, while the jury

is present, from introducing any evidence, making any statement, or asking any questions regarding the occurrence and/or substance of any plea negotiations that may or may not have taken place, as such matters are not proper concerns for the jury. Fed. R. Evid. 401, 402 and 403; *see also* Fed. R. Evid. 410 (generally providing that information provided by a defendant during plea negotiations may not be offered against a defendant in a criminal case except under limited circumstances).

### D. OFFERS TO STIPULATE

The United States moves this Court to preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding Defendant volunteering, offering, or in any manner agreeing to stipulate to certain facts unless some agreement between all parties with approval of the Court has been arranged concerning a stipulation. Fed. R. Evid. 401, 402 and 403; *United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) ("[I]t is 'unquestionably true as a general matter,' that 'the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.'" (quoting *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997)).

### E. INFORMATION KNOWN ONLY TO DEFENDANT

The United States moves this Court to preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding any information or facts that could only otherwise come to the jury's attention through the sworn testimony of Defendant, unless Defendant's counsel informs the Court that Defendant will, in fact, testify.

More specifically, the Court should not permit Defendant to introduce any irrelevant, prejudicial, self-serving, exculpatory, and/or inadmissible hearsay statements not offered against interest under Fed. R. Evid. 401, 402, 403, 801, 801(d)(2)(A) and 804(b)(3). The Government intends to introduce portions of recordings of Defendant's prior statements in interviews pursuant to Fed. R. Evid. 801(d)(2) and 804(b)(3). The portions will include self-inculpatory statements. The Court should preclude Defendant from eliciting testimony regarding any other of his own prior statements not affirmatively admitted by the Government and should not allow Defendant to argue for entire recordings to be admitted via Fed. R. Evid. 106, the rule of completeness.

Generally, a statement made by an out-of-court declarant is inadmissible when it is offered at trial to prove the truth of the matter asserted. Fed. R. Evid. 801(c), 802. However, a Defendant's self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are, therefore, not hearsay. Fed. R. Evid. 801(d)(2). See also *United States v. Woody*, 336 F.R.Ds. 293, 362 (D.N.M. 2020) (Browning, J.) (holding that a Defendant's prior out of court statements are hearsay when offered by Defendant, "and thus inadmissible . . . but they are not hearsay when the United States offers them."). Unless Defendant takes the stand, the speaker of these statements cannot be cross-examined, and therefore, these statements are not sufficiently reliable for the jury to consider. Moreover, the statements are classic hearsay. The United States anticipates that Defendant will seek to introduce such improper statements through his own testimony.

Upon admission of the government's redacted recordings, Defendant should not be allowed to admit his self-exculpatory statements through the Government's evidence by utilizing Fed. R. Evid. 106, the rule of completeness. The rule of completeness permits admission of

otherwise inadmissible statements in rare situations. Fed. R. Evid. 106. First, the rule applies only to writings and to recorded statements. *Id*. Second, the rule is limited to portions that "in fairness ought to be considered at the same time." *Id*. A court "need only admit the remaining portions of the statement which are needed to clarify or explain the portion already received." *United States v. Haddad*, 10 F.3d 1252, 1259 (7th Cir. 1993). See *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) ("The rule of completeness, however, does not necessarily require admission of [an entire statement, writing or recording.] Rather, only those portions which are 'relevant to an issue in the case' and necessary 'to clarify or explain the portion already received' need to be admitted.") (Citations omitted).

If the admitted portion is clear, admission of only the inculpatory portions of a statement is permissible. *United States v. Branch*, 91 F.3d 699, 726 (5th Cir. 1996). To rule otherwise would permit a jury to consider Defendant's version without subjecting him to the rigors of cross-examination. See *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."). "In determining whether a disputed portion of a statement must be admitted [under the rule of completeness], the trial court should consider whether '(1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) [e]nsures fair and impartial understanding of the evidence.'" *Lopez-Medina*, 596 F.3d at 735 (citations omitted). Therefore, Defendant's self-serving statements should not be admitted under the rule of completeness as these statements would confuse and mislead the jury as to the relevant facts at issue.

As such, this Court should not allow Defendant to elicit or present testimony regarding his prior interviews to any extent beyond that which is admitted by the United States per the

5

Federal Rules of Evidence. To the extent Defendant believes the jury should hear additional information regarding either of these interviews, he must take the stand to provide it.

**F. INFORMATION ABOUT DEFENDANT'S FAMILY AND PERSONAL CIRCUMSTANCES**

The United States moves this Court to preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding any information or facts about Defendant's family and personal circumstances that are not relevant to the events described in the indictment. For example, the Defendant's two sons – both over the age of 18 at the time – were present at the scene of events described in the present indictment. Defendant described to law enforcement that he was there that day to assist his sons. In his descriptions to officers, he called his sons, "my boys," and attempted to elicit sympathy for his narrative by seeking sympathy for his alleged fatherly acts. Naturally, defendant must also be concerned about how a guilty finding in this case could affect his relationship with and ability to see his sons and other family. However, such considerations are not appropriate for the jury's consideration on the merits of this case under Fed. R. Evid. 401 and 403. These are extenuating matters most appropriately presented in presentencing if the jury reaches a guilty finding.

If Defendant decides to testify, his counsel has every right to inquire as to biographical details. This may elicit a response that Defendant has children whom he loves, for example. Such descriptions should be the end of that inquiry because more detail would confuse the issues, mislead the jury, and would inappropriately appeal to the jurors' emotions and sympathies.

**G. ADMINISTRATIVE DISCIPLINE**

The United States moves this Court to preclude Defendant and his counsel from engaging in any attempt to impeach any witness with prior administrative disciplinary findings unless and

until the Court has an opportunity to review such evidence to determine its admissibility. Fed. R. Evid. 608(b) allows for evidence of specific instances of conduct to be inquired into on cross-examination if probative of truthfulness or untruthfulness at the discretion of the Court. The United States asks that Defendant's counsel approach the bench before delving into such evidence, thereby allowing the Court to make the appropriate determination on admissibility.

No evidence of prior administrative disciplinary matters for government witnesses is known to exist by the United States. This is a prophylactic request made in an abundance of caution. Of course, evidence relating to a witness's truthfulness, bias, and credibility are always at issue and may be questioned pursuant to Fed. R. Evid. 608. Thus, the court may not be able to provide a categorical exclusion of all prior administrative discipline. That said, such impeachment evidence does not enjoy automatic admissibility and must adhere to proper foundation and must bear on the witness' testimony.

**H. DEFENSE EXHIBITS**

The United States also moves this Court to preclude Defendant and his counsel, while the jury is present, from introducing any evidence, making any statement, or asking any questions regarding defense exhibits that have not previously been supplied to counsel for the United States. Under Fed. R. Crim. P. 16(d)(2)(C), if a party fails to comply, the Court may prohibit the party from introducing the undisclosed evidence. Under both Rule 16 and the Discovery Order in this case (Doc. 17), Defendant is required to provide reciprocal discovery to the government. As of the date of this filing, no reciprocal discovery has been provided to the United States in this case.

**I. DEFENDANT'S HEALTH**

The Court should act to preclude Defendant and his counsel, while the jury is present,

from introducing any evidence, making any statement, or asking any questions regarding Defendant's mental or physical health, including, without limitation, past or current diseases, traumas, illnesses, attacks, and medical or psychological conditions. Fed. R. Evid. 401 and 402. As a foundational matter, the danger of unfair prejudice flowing from evidence of Defendant's health would substantially outweigh its probative value and it "would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward [Defendant]." *United States v. Begay*, 497 F.Supp.3d 1025, 1090 (D.N.M. 2020) (Browning, J.). See also *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999).

The United States is not aware of any condition or claim that Defendant may raise at trial. Thus, this is a prophylactic request made in an abundance of caution.

**J. REFERENCES TO PUNISHMENT**

The United States moves this Court to preclude Defendant and his counsel from introducing any evidence, making any statement, or asking any questions regarding sentencing-related issues, including, but not limited to, the advisory sentencing guideline range application and the penalties Defendant faces if convicted at trial.

Defense comments warning a jury against "taking away defendant's freedom," "sending him to jail," "taking him away from his family," or any statement regarding possible consequences serve no purpose at trial. The mention of such facts serves only to put before the jury the matter of what sentence or consequences a defendant might receive and, if it occurs, can only be intended to arouse the jury's sympathy or prejudice. Consequences of a guilty verdict are not relevant to the jury's determination of guilt and any mention of them before the jury would be prejudicial. The Tenth Circuit has fashioned a bright line rule that "[u]nless a statute specifically requires jury participation in determining punishment, the jury shall not be informed of the

possible penalties." *United States v. Parrish*, 925 F.2d 1293, 1299 (10th Cir. 1991) (overruled on other grounds); see also *United States v. Greer*, 620 F.2d 1383, 1385 (10th Cir. 1980) (noting that absent a statutory requirement that the jury determine punishment, "nothing is left 'for jury determination beyond the guilt or innocence of an accused.'") (quoting *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971); and *Rogers v. United States*, 422 U.S. 35, 40 (1975) ("The jury has no sentencing function and should reach its verdict without regard to what sentence might be imposed.").

To allow a jury to consider punishment is an invitation for jury nullification, as the jury would consider something other than the evidence when determining guilt or innocence. The Tenth Circuit has also held that there is no right to jury nullification. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (citing *United States v. Thomas*, 116 F.3d 606, 615 (2nd Cir. 1997) (observing that "the power of juries to 'nullify' or exercise a power of lenity is just that - a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent.")); *see also Greer*, 620 F.2d at 1385 (10th Cir. 1980) (noting "[t]he authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial. Breach of this standard has often been grounds for reversal.").

Other circuits have ruled similarly. In *United States v. Johnson*, 62 F.3d 849, 850-51 (6th Cir. 1995), the district court declined a defendant's request to inform the jury regarding the defendant's punishment. In affirming, the circuit court reasoned:

> When a jury has no sentencing role, providing sentencing information invites jurors to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. Indeed, the only possible purpose that would be served by informing jurors of the mandatory sentence would be to invite jury nullification of the law.

The court in *Johnson* also stated: "[t]he jury is to find guilt or innocence on the basis of the legal

9

standards set out in the Judge's charge, and the consequences in terms of punishment is a matter for Congress . . . or for the Court . . . ." *Id.* at 850 (quoting *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970)); see also *United States v. Meredith*, 824 F.2d 1418, 1429 (4th Cir. 1987) (noting "[t]he jury must reach its verdict without considering possible sentences"); *United States v. Trujillo*, 714, F.2d 102, 106 (11th Cir. 1983) (holding that "defense counsel may not argue jury nullification during closing argument"); *United States v. O'Brien*, 609 F.2d 895, 897 (8th Cir. 1979) (observing "[t]he matter of assessing penalty is exclusively within the province of the court, and the jury's sole purpose is to determine the facts and thereby the guilt or innocence of the defendant"); and *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir. 1966) (noting that "[i]t is axiomatic that it is the exclusive function of juries to determine whether defendants are guilty or not guilty, and of the court to determine matters of punishment."). The law on this issue is well-settled and squarely forecloses defendant's discussion of any possible penalty at trial.

Allowing Defendant to inject discussion as to the possible penalty would contradict the jury instructions regularly given by this Court. Tenth Circuit Pattern Jury Instruction 1.04 states that it is the jury's duty "to base [its] verdict solely upon the evidence, without prejudice or sympathy." Similarly, Instruction 1.20 instructs the jury that "[i]f [it] find[s] the defendant guilty, it will be [the Court's] duty to decide what the punishment will be. [It] should not discuss or consider the possible punishment in any way while deciding [its] verdict."

### K. **DEFENSES TO POSSESSION**

The United States moves this Court to preclude Defendant and his counsel from introducing any evidence, making any statement, or asking any questions regarding Defendant's belief that he possessed the firearms out of "necessity," or that his possession constituted

10

'fleeting possession,' or 'innocent possession.'

Upon information and belief, the United States anticipates Defendant to testify that he came upon the scene of a disagreement between his sons and a stranger at a mobile home in a South Valley mobile home park, saw the weapons and ammunition sitting on a patio amid the disagreeing parties, and removed the firearms and ammunition for others' safety. He then fled the scene in his Ford Explorer and was stopped by Bernalillo County Sheriff Deputies before he left the mobile home park. He did not take possession of the weapons and then call 911. And, contrary to the narrative that he came upon the firearms there, he also had a black pistol holster threaded into his belt when he was stopped. Finally, the person who called 911 at the scene of the disagreement will testify that defendant pulled a weapon on her and that she believes he fired a single round in her direction. When the firearms were taken into evidence, the revolver had a round of ammunition in every chamber, to include one expended round.

Specifically, none of the "necessity," 'fleeting possession,' or 'innocent possession,' defenses are applicable under these facts and therefore do not constitute cognizable legal defenses to the subject charges. Testimony supporting any of the three defenses would amount to a call for jury nullification.

This is especially the case since defendants are normally only "entitled to an instruction on his theory of defense[] provided that theory is supported by some evidence and the law." *United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006). Indeed, a defendant "must prove his claimed defenses by a preponderance of the evidence." *Id*. at 1122.

The necessity defense may excuse an otherwise unlawful act if the defendant shows that:

(1) there is no legal alternative to violating the law,
(2) the harm to be prevented is imminent, and
(3) a direct, causal relationship is reasonably anticipated to exist between

> defendant's action and the avoidance of harm....
>
> The defense does not arise from a 'choice' of several courses of action.... It can be asserted only by a defendant who was confronted with ... a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts.

*United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) (internal quotations and citations omitted).

'Fleeting possession' and 'innocent possession are similar for purposes of this analysis. The Tenth Circuit has discussed but never recognized a 'fleeting possession' defense. See, e.g., *United States v. Washington*, 596 F.3d 777, 782 (10th Cir. 2010) (affirming a district court's refusal to provide a 'fleeting possession' instruction where defendant proposed the Court provide the following instruction: "In addition, momentary or transitory control of an object is not possession. You should not find that the defendant possessed the object if he possessed it only momentarily, or did not know that he possessed it.").

Likewise, the Tenth Circuit has not adopted an "innocent possession" defense. In *United States v. Curls*, the Circuit Court engaged in an extensive discussion about the defense, acknowledging in dicta that the defense may be available in certain circumstances. *United States v. Curls*, 219 F. App'x 746, 759 (10th Cir. 2007). However, the Court declined to explicitly recognize the defense or to overturn Curls' conviction because there was not evidence to support "a colorable argument that Mr. Curls took adequate measures to rid himself of the firearm as promptly as reasonably possible." *Id*. (internal quotation and citation omitted). The facts of *Curls* are, simply put, that he alleged he inadvertently discovered a firearm, took possession of it, and intended to turn it over to law enforcement later that day. *Id*. at 758.

In United States v. Baker, the Tenth Circuit observed that the "[s]tatute criminalizing

knowing possession of ammunition by a felon did not invite inquiry into defendant's reason for possession of the ammunition." *United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir. 2007), *rehearing and rehearing en banc denied* 523 F.3d 1141, *certiorari denied* 555 U.S. 853. In *Baker*, similarly to this case, the defendant alleged he was being a good Samaritan in attempting to turn over to police the ammunition he had discovered outside of a Halloween party to prevent any danger to children, However, the *Baker* court declined "to recognize Mr. Baker's proposed 'innocent possession' defense when Congress could have created the defense had it seen fit to do so," *Id*. at 1327,[1] and acknowledged that if a district court were to find a basis for providing such an instructions, it must apply the instruction and defense "strictly and parsimoniously." Id. at 1326.

Here, there is no evidence that Mr. Quintana intended to turn in the firearms. Indeed, the evidence tends to suggest that he did not suddenly come upon the weapons at all, but carried one in his holster, and shot a round from it at the scene.

**2. Conclusion**

Accordingly, the United States respectfully moves this Court to grant the United States' motion and order Defendant, his counsel, and all defense witnesses to refrain from asking any question, introducing any evidence, or making any statement or argument that, either directly or indirectly, implicates the foregoing while the jury is present. The United States further requests that this Court instruct Defendant's counsel to inform any potential witnesses of this Court's Order—and the prohibitions included therein—prior to trial.

---

[1] Separately, the necessity defense and innocent possession defense overlap to a degree. In *Baker*, the court cited *United States v. Hendricks*, 319 F.3d 993, 1007 (7th Cir.2003), for its holding refusing to expand the necessity defense to encompass innocent possession.

Respectfully submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney

*Electronically filed on June 3, 2022*
ALEXANDER F. FLORES
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico 87102
505-346-7274

I HEREBY CERTIFY that on June 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will cause a copy of this filing to be sent to counsel for Defendant.

*/s/*
ALEXANDER F. FLORES
Assistant United States Attorney